Maticka v. Jensen.

JOSEPH MATICKA, APPELLEE, V. EDWARD E. JENSEN,
APPELLANT.

FILED MARCH 13, 1915.   No. 17859.

Highways: ESTABLISHMENT BY USER.  Where, after an attempt has been
    made to lay out a public road across open prairie land, which,
    through failure to comply with statutory requirements, fails to
    legally establish such road, the public enters upon and uses the
    same as a public road, and the owner of the land traversed thereby
    fences his land on each side of the road along the entire line there-
    of, cultivating the land on one side, and using that on the other
    side as a pasture, and these conditions continue to exist for ten
    years or more, the irregularity in the original proceeding will be
    *held* cured, and such land thereby becomes and will remain a public
    road until vacated or abandoned, as provided by law.

APPEAL from the district court for Howard county:
JAMES N. PAUL, JUDGE.  *Affirmed.*

*W. H. Thompson,* for appellant.

*T. T. Bell, contra.*

HAMER, J.

The plaintiff is the road overseer.  He brought an action
in Howard county, seeking to enjoin the defendant from
fencing in and plowing up an alleged highway.  The cause
was tried before the Honorable James N. Paul, one of the
judges of the district court.  The defendant had filed a mo-
tion to dissolve the injunction granted at the commence-
ment of the case.  The case came on for trial on the peti-
tion and answer in the main case.  There was an effort to
punish the defendant for contempt.  The court reserved his
decision on the order to show cause why the defendant
should not be attached for contempt until a full hearing
should be had.  The trial was on May 10, 1912.  The jour-
nal entry of the trial recites:  "The court, after hearing
the evidence and argument of counsel, and after considera-
tion, and being fully advised in the premises, finds on the
issues joined that a county road exists on and across the

northeast quarter of section twenty-nine (29) township
sixteen (16) north of range ten (10) west, of the sixth P.
M., in Howard county, Nebraska, near the northeast cor-
ner thereof, cutting off about twelve acres in said corner;
that said road was established in the year 1883, and the
same has been in continuous use by the public generally
from said date up to November, 1911; that said road has
been unlawfully closed and fenced by the defendant, Ed-
ward E. Jensen, and said fences are now across, upon and
obstructing public travel along and on said road. On the
main cause in this case, it is considered and adjudged by
the court that a mandatory injunction issue commanding
Edward E. Jensen, defendant herein, to remove any and
all obstructions of whatever nature or kind, either in, on,
over, or across said road, and that he open said road 66 feet
wide over and across said land, and that he do so within
five days after notice of this injunction and order; and the
said defendant is enjoined from (in) any manner obstruct-
ing said road or interfering with public travel on, along
and over said road henceforth." There was a further
finding that the defendant was not guilty of contempt in
disobeying the temporary injunction. From the order
made the defendant appeals.

On May 17, 1912, a further order was made: "That the
defendant, Edward E. Jensen, take down and remove all
fences and other obstructions in, on, over and across the
public highway running across the northeast quarter of
section 29, in township 16, range 10, in Howard county,
Nebraska, near the northeast corner of said quarter sec-
tion, and he, the said Edward E. Jensen, is further en-
joined from erecting, placing upon or causing to be erected
or placed upon, or in, by himself, his agents, attorneys or
employees, any fence or obstruction in, over or upon said
highway, and from digging, plowing or in any manner
damaging said highway, and from in any manner inter-
fering with public travel on and along said highway; and
the said Edward E. Jensen is further ordered to remove
all such obstructions and keep said highway clear there-

from for a width of 66 feet at all points across the said northeast corner of said quarter section."

The evidence shows that in 1883 a petition was filed by 13 resident taxpayers in the vicinity of the road in question, asking for the laying out of the road. The evidence does not show that any of the statutory requirements for the laying out of public roads was subsequently complied with. The only other evidence of any action that was taken is an entry in the commissioners' record as follows: "On motion, the road petition, filed by Michael Chmielecki et al. was granted as prayed for." After these informal proceedings were had the public continued to travel across defendant's land by substantially the same route as theretofore; the only variation being a slight change of a few rods at one end of the road caused by the construction of a. fence. This change was made about 21 years prior to the time of the trial of this suit. Therefore the public gradually used the road in question as a public road, and the owner of the land traversed thereby fenced his land on each side of the road along the entire line thereof, cultivating the land to crop on one side, and using the land on the other side as a pasture. These conditions continued to exist for at least 15 or 20 years prior to the time defendant attempted to close the road.

The defendant relies upon two defenses: (1) That no road was ever legally laid out across his land, which is true. (2) That he closed the road by permission of the county commissioners under an agreement made with them that if he would grade the road on the section line around the northeast corner of his land, so as to connect the section line road at the point where the road in controversy left the east line of his land with the section line road where the road in question connected therewith on the north line of his section, and put a culvert over a draw which would have to be crossed by the grade mentioned, all at his own expense, except as to the material for the culvert, which the commissioners agreed to furnish, they would waive and relinquish the right to use the road in controversy; that he performed the work as agreed, at an

expense of about $300, and gave a roadway around the northeast corner of his land for the purpose of connecting up with the section line roads; that when the work was completed the commissioners examined it and found it to be in accordance with the agreement, approved it, and then told him that he could close up the road in question; that the traveling public knew he was doing this work at the time it was being done and the purpose for which he was doing it, and that the plaintiff, as road overseer, and the public are now estopped to his closing the road. This contention, of course, must fail. The irregularity in the proceedings for laying out the road, in 1883, was cured by the subsequent use of the public for more than ten years, the right to which use was recognized and acquiesced in by the owner of the land in the construction of the fences along both sides of the road as above shown, and in permitting the use of the road by the public without objection for so long a period of time. The road having been thus established, it will remain a public road until vacated or abandoned, as provided by law. The judgment of the district court was right, and it is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.